# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALLOC, INC.,

                              Plaintiff,

          vs.

                                                  Case No. 02-C-1266

UNILIN DÉCOR N.V. and UNILIN BEHEER B.V.,

                              Defendants,

          vs.

BERRY FLOOR N.V., BERRY FINANCE, N.V., and
ARMSTRONG WORLD INDUSTRIES, INC.,

                         Counterclaim Defendants.

---

UNILIN DÉCOR N.V. and UNILIN BEHEER B.V.,

                              Plaintiffs,

          vs.

                                                  Case No. 03-C-342
                                                  [Consolidated with
                                                   Case No. 02-C-1266]

VÄLINGE ALUMINUM AB, ALLOC, INC., and
BERRY FLOOR N.V.,

                              Defendants.

UNILIN BEHEER B.V. and UNILIN DÉCOR N.V.,

                **Plaintiffs,**

      vs.                                                 **Case No. 04-C-121**
                                                         **[Consolidated with**
                                                     **Case No. 02-C-1266]**

VÄLINGE ALUMINUM AB,
ALLOC, INC.,
BERRY FLOOR N.V., and
ARMSTRONG WORLD INDUSTRIES, INC.,

                **Defendants.**

---

## DECISION AND ORDER

---

        Patents for laminated flooring panels underlie this consolidated patent infringement action. Armstrong World Industries, Inc. ("Armstrong"), along with Alloc, Inc., Berry Floor, N.V., and Berry Finance N.V. (collectively "the Berry Defendants"), is a defendant to a counterclaim asserted by Unilin for infringement of United States Letters Patent Number 6,490,836 ("the '836 patent"). This decision and order addresses Armstrong's motion to dismiss (Docket No. 55) and Unilin Décor N.V. and Unilin Beheer B.V.'s (collectively "Unilin") motion

for realignment of the parties and for leave to file an amended consolidated complaint (Docket No. 58).[1]

## *MOTION TO DISMISS UNDER THE CUSTOMER SUIT EXCEPTION*

Invoking Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal of claims for failure to state a claim upon which relief may be granted, Armstrong seeks dismissal of the claims against it, or a stay of further proceedings against it pending resolution of the claims between Unilin and the Berry Defendants. Armstrong relies upon the customer suit exception and the automatic bankruptcy stay, 11 U.S.C. § 362.

Armstrong asserts that, since the Berry Defendants are the manufacturers of the products which allegedly infringe the '836 patent, the Berry Defendants are the "real parties in interest." (Armstrong Mem. in Supp. of Mot. to Dismiss Under the Customer Suit Exception ("Armstrong Dismiss Mem.") 4-6.) Armstrong contends that, since the law favors suits against manufacturers over suits against mere customers, the counterclaims for infringement of the '836 patent should be dismissed thereby promoting judicial economy and preventing undue prejudice, confusion, and harassment. *Id*. 4. Armstrong notes that Unilin has previously shown a willingness to proceed without Armstrong – before this action was transferred from the District of Columbia, Unilin voluntarily dismissed its claims against Armstrong. *Id*. Armstrong also maintains that it should be dismissed as a counterclaim defendant under the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362. (*Id*. 4, 12.)

---

[1]Unilin's other motion for leave to file an amended complaint (Docket No. 158), which recently became fully briefed, will be addressed in a separate decision.

Case 2:02-cv-01266-RTR   Filed 12/15/05   Page 3 of 23   Document 218

Unilin contends that the customer suit exception is inapplicable because the defendants and counterclaim defendants are parties in the same action. (Unilin Br. in Supp. of Unilin's Opp'n to Armstrong's Mot. to Dismiss under the Customer Suit Exception ("Unilin Opp'n Dismiss Br.") 4-5.) Unilin disputes Armstrong's characterization of itself as simply a customer. (*Id*. 4.) Unilin asserts that its right to bring suit against any and all infringers should not be limited by distinctions between manufacturers and customers. (*Id*. 3, 7.) Unilin also maintains that the automatic stay provision of the Bankruptcy Code should not apply since the claims of infringement are (or, in the case of the '486 patent, would be) limited to post-petition conduct. (*Id*. 8-9.)

Before addressing the substance of the motion, the Court first questions whether Armstrong properly relies on subsection (6) of Rule 12(b) of the Federal Rules of Civil Procedure.[2] Dismissal under Rule 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). Stated somewhat differently, under Rule 12(b)(6), dismissal of a complaint is proper when it appears beyond doubt that the plaintiff can

---

[2]Both parties have submitted affidavits during their briefing of the instant motion. Armstrong has submitted the Affidavit of Kevin M. Biedermann ("Biedermann Aff.") and Unilin has submitted the Declaration of Art Cody in Support of Unilin's Opp'n to Armstrong's Motion to Dismiss under the Customer Suit Exception ("Cody Decl.").

Rule 12(b) provides that if matters outside the pleadings are presented to and not excluded by the court in a Rule 12(b)(6) motion, the motion "shall be treated as one for summary judgment" and "all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b). The court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), *see also*, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (records and reports of administrative bodies may be considered on Rule 12(b)(6) motion without triggering conversion to summary judgment motion); *Kramer v. Time Warner*, 937 F.2d 767, 774 (2nd Cir. 1991) (documents filed with SEC); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d § 1364 at 140-41 (3d ed. 2004).

The Court has not considered the information contained in the Biedermann affidavit or the Cody Declaration in its decision. The Court has taken judicial notice of facts contained in the public record – the filings in this consolidated action, Armstrong's bankruptcy action and the issuance dates for the '836 and '486 patents.

– 4 –

prove no set of facts in support of his claim on which relief may be granted. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001) (citations omitted). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (citations omitted).

However, the focus of Armstrong's motion is not on the allegations of the complaint. Moreover, neither the customer suit exception nor the automatic stay provision involve invocation of Rule 12(b)(6). Armstrong's invocation of Rule 12(b)(6) may have more to do with the primary relief it seeks by means of its motion – dismissal – than the consumer suit exception and/or bankruptcy stay provision invoked.[3] Regardless, the only significant facts that the parties rely upon are matters of public record.

Despite the title of Armstrong's motion, the discussion in its briefs is not clear as to whether Armstrong asserts the automatic stay provision of the Bankruptcy Code as an independent basis for stay and/ dismissal, or whether Armstrong only relies upon the automatic stay as a factor to support application of the customer suit exception. (*Compare* Armstrong Dismiss Mem. 1 and 12.) Regardless, the criteria for a stay under the customer suit exception and a stay under the Bankruptcy Code differ and, therefore, will be addressed separately. *See, e.g.,*

---

[3]Unilin cites no cases where an action or claim was dismissed based on the customer suit exception, *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 n.3 (1st Cir. 1977), and/or the automatic bankruptcy stay provision. As recently stated, "[e]ven when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff." *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002) (citing *Deakins v. Monaghan*, 484 U.S. 193, 202-04 (1988); *Central States Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 838-39 (7th Cir. 1999)).

*Sunstrand Corp. v. Am. Brake Shoe Co.*, 315 F.2d 273, 276 (7th Cir. 1963) ("A finding of harassment or the probability thereof is a necessary prerequisite to the exercise of the District Court's discretion in restraining suits against customers."); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 975-76 (N.D. Ill. 1992) (Patent infringement case addressing the assertion that the claims were subject to the automatic stay and stating that "[a]ll proceedings in a single case are not lumped together for purposes of automatic stay analysis." The district court (Seventh Circuit Court of Appeals Judge Frank Easterbrook, sitting by designation as a district judge) addressed which claims in the action could have been brought against the debtor-alleged infringer *before* the debtor filed its bankruptcy petition.).

In light of the foregoing, the Court views Armstrong's motion as presenting two distinct issues: 1) Whether the customer suit exception applies even though Armstrong, the customer, and the Berry Defendants, the manufacturers, are co-defendants in the same patent infringement action? and, 2) Whether Unilin may maintain infringement claims against Armstrong (currently a debtor in bankruptcy proceedings) limited to post-petition conduct when the alleged infringement began pre-petition?

*The Customer Suit Exception*

Patent litigation often involves a race to the courthouse by the patent holder and the alleged infringer. When two or more patent infringement suits are commenced and each suit involves the same or similar parties and issues, courts will normally grant priority to the first-filed suit and enjoin or stay subsequent suits in order to avoid duplicative litigation and inefficient use of judicial resources. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184-86

(1952). This practice is known as the first-to-file rule. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990); *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).

The "customer suit exception" is an exception to the first-to-file rule – under the customer suit exception, a subsequent action against an allegedly infringing "manufacturer" may be given priority over an initial action against an allegedly infringing "customer" of the manufacturer. *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 179-80 (2d Cir. 1969); *Codex Corp.*, 553 F.2d at 738 (recognizing a rebuttable presumption that, in certain circumstances, a manufacturer's declaratory judgment action may take priority over a customer action in another jurisdiction).

Although various policies have been posited as the basis for this exception, typically the stated policy reasons are that manufacturers are the "real parties in interest" and the exception will prevent customer harassment. *See Katz*, 909 F.2d at 1464; *A.P.T., Inc. v. Quad Env'l Tech. Corp, Inc.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988) (citing *Codex*, 553 F.2d at 737-38). The exception and its underlying rationales assume the manufacturer's suit will address all pertinent issues and adequately protect the patentee. *A.P.T., Inc.*, 698 F. Supp. at 721. The customer suit exception is usually applied in situations where at least one infringement suit involving a customer defendant is pending in one jurisdiction, and a similar suit involving a manufacturer defendant is pending in another jurisdiction. *See Naxon Telesign Corp. v. GTE Info. Sys., Inc.*, 89 F.R.D. 333, 339 (N.D. Ill. 1980).

In the present case, the allegedly infringing manufacturers, the Berry Defendants, and the allegedly infringing customer, Armstrong, are defending claims of infringement in the *same* consolidated suit in the *same* jurisdiction. Therefore, there is no issue of which jurisdiction should be granted priority and therefore the exception to the typical priority rule is inapposite. *See Id*. ("where suit against the manufacturer and customer would take place simultaneously . . . the problem addressed in *Codex* and *Gluckin & Co.* is not presented").

Furthermore, the rationales underlying the customer suit exception do not support its application in the instant case. While in some circumstances the law favors suits against manufacturers, the law does not do so when a patentee has "a separate interest in litigating against the customer." *A.P.T.*, 698 F. Supp. at 721; *Emerson Elec. Co. v. Black & Decker Mfg.*, 606 F.2d 234, 241 (8th Cir. 1979); 8 Donald Chisum, *Chisum on Patents*, § 21.03[6](4) (2005) ("The preference for the manufacturer's suit over the customer suit is not an absolute one."). Unilin has asserted that Armstrong disseminated manuals showing users how to "shave off" a portion of a groove of the Swiftlock product to allow for snapping engagement. (Unilin Opp'n Dismiss Br. at 4.) Whether or not the shaving off constitutes contributory infringement of claims of the United States Letters Patent Number 6,006,486 ("the '486 patent") or claims of the '836 patent are issues indicating that Unilin has a unique interest in litigating its counterclaims against Armstrong.

Moreover, none of the cases cited by Armstrong involve the *dismissal* of a customer defendant from a case because of their status as a customer. Rather, a stay or transfer of proceedings has consistently been the remedy when the criteria of the customer suit exception

have been satisfied. *See*, *e.g.*, *Kerotest Mfg.*, 342 U.S. at 185 (upholding stay); *Katz*, 909 F.2d at 1463 (stay of proceedings; stay of New York proceeding reversed; stay of Batavia proceedings upheld); *Codex*, 553 F.2d at 735 (reversing Massachusetts district court's denial of an injunction to stay a Kansas district court action against manufacturer's customer. Massachusetts district court action was declaratory judgment action brought by manufacturer of accused product against patent holder. ); *Am. Acad. of Sci. v. Novel, Inc.*, 24 U.S.P.Q.2d 1386 (N.D. Ca. 1992) (denying allegedly infringing defendant manufacturer's motions to sever, transfer and stay proceedings by patent holder against manufacturer's customers under the customer suit exception pending resolution of manufacturer's subsequently-filed action for declaratory judgment of invalidity and non-infringement); *A.P.T., Inc.*, 698 F. Supp. at 722 (denying motion to enjoin first-filed proceeding because customer suit exception was inapplicable and transferring competing manufacturer's declaratory judgment action to forum of first-filed action); *Refac Int'l, Ltd. v. IBM.*, 790 F.2d 79, 80-81 (Fed. Cir. 1986) (upholding stay of patent holder's claims against customers).

Armstrong cites *Refac International, Limited*, 790 F.2d at 80-81, for the proposition that the customer suit exception is applicable even when manufacturers and customers are joined in the same infringement action. *Refac* involved a patent infringement action brought by a patent holder, Refac International, Ltd. ("Refac") against 37 defendants. *Id*. at 81. Citing "sensible judicial management," the district court stayed further proceedings against 31 customer defendants and allowed the case to continue against six defendants who acknowledged they were

manufacturers. *Id.* The 31 customer defendants had agreed to be bound by the district court's decision and remained parties in the action. *Id.*

Refac's appeal from the stay order was dismissed. *Id.* at 80. Addressing Refac's motion for reconsideration of the dismissal order, the appellate court stated that Refac ignored the case management purpose of the order and Refac's own interest in completing a trial before the expiration of its patents, which it could not expect to do with 37 defendants. *Id.* On a petition for reconsideration, the appellate court stated that "[t]he order staying the prosecution of claims against thirty-one defendants is a matter of case management within the discretion of the district court." *Refac Int'l Ltd. v. IBM*, 798 F.2d 459, 460 (Fed. Cir. 1986).

Subsequent decisions have held that the stay fashioned in *Refac* was a product of the rare circumstances presented and have limited its application. *Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, No. 96 C 0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996); *Rates Tech. Inc. v. New York Tel. Co.*, No. 94 Civ. 9297, 1995 U.S. Dist. LEXIS 10254 (S.D.N.Y. July 23, 1995). The circumstances of *Refac* are distinguishable from those of the instant consolidated action – the number of defendants in this action do not pose case management issues, Armstrong has not agreed to be bound by the litigation between Unilin and the Berry Defendants, and Unilin has a distinct infringement claim against Armstrong. *See Mitsubishi Elec. Corp.,* 1996 U.S. Dist. LEXIS 12239 at *7-*10; *Rates Tech. Inc.*, 1995 U.S. Dist. LEXIS 10254 at *6-*7.

Attempting to demonstrate harassment by Unilin, Armstrong sets forth the history of Unilin's treatment of Armstrong throughout these consolidated infringement suits. (Armstrong Dismiss Mem. 1-3, 9-11.) Unilin filed an action alleging infringement of the '486 Patent in the

federal district court for the District of Columbia (Case No. 01-CV-1571), naming Armstrong as a Defendant.[4]  Subsequently, Unilin stipulated to Armstrong's dismissal from that action.

Later, in Case No. 02-C-1266 filed in this district, Unilin joined Armstrong as a Counterclaim Defendant alleging infringement of the '836 Patent.  Now, Unilin seeks to re-assert claims of infringement of the '486 patent against Armstrong which were dismissed in Case No 01-CV-1571.  *Id*.

The foregoing does not support Armstrong's contention that it is being harassed by Unilin.  *Sunstrand*, 315 F.2d at 276-77.  Furthermore, this Court questions how the purported "harassment" will be alleviated by dismissing Armstrong from this infringement litigation.  If the Berry Defendants do not to establish patent invalidity or non-infringement of the Unilin patents, Unilin could recommence proceedings against Armstrong.

To summarize, in almost every instance, the courts have applied the customer suit exception to resolve issues of venue priority.  In the present action, since all relevant parties are joined in the same suit in the same jurisdiction and since the "case management" issues of *Refac* are not present, Armstrong has not shown circumstances that warrant the application of the customer suit exception.

*Automatic Stay Under the Bankruptcy Code*

Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have

---

[4]The District of Columbia action (Case No. 01-CV-1571) was transferred to this District, assigned Case No. 04-C-121, and consolidated with this action, Case No. 02-C-1266, and Case No. 03-C-342.  (Case No. 03-C-342 also was originally filed in the District of Columbia as Case No. 00-CV-1823. )  Case No. 02-C-1266 and Case No. 03-C-342 were consolidated into a single action in November 2003 and the Case No. 04-C-121 action was added to the consolidated cases on September 30, 2004.

been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). Thus, on its face, the section does not appear to present any obstacle to plaintiffs who bring suit against debtors for conduct which began *after* the debtor filed a bankruptcy petition. However, when a plaintiff brings suit against a debtor concerning a continuing course of conduct which began pre-petition, the answer is not so clear. May a plaintiff merely select a post-petition date on which to begin a claim of the allegedly infringing conduct?[5]

It is not apparent from the parties' submissions when, exactly, Armstrong filed its bankruptcy petition. However, the Court takes judicial notice of the court docket for of the United States Bankruptcy Court for the District of Delaware, which indicates that Armstrong filed its bankruptcy petition on December 6, 2000, and that action is still pending. *See In re Armstrong World Industries, Inc., et al.*, Case No. 00-04471 (JKF), Docket as of Dec. 7, 2005 (D. Del. Bankr.)

When Armstrong filed its motion to dismiss in this action, only Unilin's counterclaims of infringement of the '836 patent were pending against Armstrong. The '836 patent issued on December 10, 2002. Unilin filed its infringement counterclaims against Armstrong on March 21, 2003 – about three months after the issuance of '836 patent. Given the date of issuance of the '836 patent, Unilin's action against Armstrong for infringement of the '836 patent was not one which "was or could have been commenced" prior to the December 2000, date that Armstrong filed its bankruptcy petition. *See Larami Ltd. v. Yes! Entm't Corp.,*

---

[5]To the extent that § 362(a) would deprive the Court of jurisdiction over Unilin's claims against Armstrong, this Court may determine the applicability of §362(a) because district courts have jurisdiction to determine their own jurisdiction. *In re Mahurkar*, 140 B.R. at 973.

244 B.R. 56, 58-59 (D.N.J. 2000) (denying motion to enforce automatic stay provision under § 362(a) in patent infringement action when the subject patent issued after the bankruptcy petition was filed and damages were sought only for the infringing action after the patent issued.)[6] Consequently, Unilin's counterclaims for infringement of the '836 patent do not fall within the purview of § 362(a), and will not be stayed. Moreover, to the extent that Armstrong may rely upon § 362 as a basis for dismissal, the filing of a bankruptcy petition "operates as a stay," 11 U.S.C. § 362, and does not provide authority for dismissal of claims or an action.

Armstrong has not established that the claims against it should be dismissed or stayed. Therefore, Armstrong's motion to dismiss is denied.

### MOTION TO REALIGN AND TO AMEND

By its motion to amend and realign, Unilin seeks to realign itself as the plaintiff in the 1266 action and Armstrong, the Berry Defendants, and Valinge Aluminum AB as the defendants. Unilin also seeks to file an amended complaint consolidating all claims of the Case No. 02-C- 1266, Case No. 03-C-342, and Case No. 04-C-121 actions, to substitute Flooring Industries for Unilin Décor as a party, and to add claims of infringement of the '436 patent against Armstrong.[7] (Unilin Mem of P. & A. in Supp. of Unilin's Mot. to Realign the Parties and for Leave to File an Am. Consol. Compl. ("Unilin Mem. of P. & A.") 3.) Armstrong and the Berry Defendants argue that realignment is not warranted, that Unilin is collaterally estopped

---

[6]Significantly, the court held that although the post-petition claim was not barred by §362(a), the execution or the attachment of a judgment obtained by a post-petition claim would be barred. *Larami, Ltd.*, 244 B.R. at 59 n.4. The plaintiff could proceed on its claim before the district court, but would have to petition the bankruptcy court for release from the stay in the event that it sought to satisfy a judgment against the property of the bankruptcy estate. *Id.*

[7]For ease of reference, the three consolidated actions are referred to as the 02-C-1266, 03-C-342, and/or 04-C-121 action(s).

from substituting Flooring Industries as the exclusive licensee of the patents in suit, and that automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), prevents Unilin from bringing the infringement claims against Armstrong. (Pl/Counterclaim Defs/Defs' Opp'n. to Unilin's Mot. to Realign the Parties and File an Am. Consol. Compl. ("Berry Opp'n. Br.") 5.)

*Realignment of the Parties*

The disposition of a motion to set the order of proof for trial and to "realign" the parties rests in the discretionary powers of the district court. *Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339, 1344 (8th Cir.1996) (citing *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 704, 706 (8th Cir. 1967)). *See also*, *Lentner v. Lieberstein*, 279 F.2d 385, 388 (7th Cir. 1960). Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof. *Martin v. Chesebrough-Pond's, Inc.*, 614 F.2d 498, 501 (5th Cir. 1980). Where the parties to a declaratory judgement action each bear the burden of proof on respective issues, a district court may properly deny motions for realignment. *See, e.g., Anheuser-Busch, Inc*, 89 F.3d at 1344 (upholding the district court's denial of Labatt's motion to realign the parties since "[b]oth Labatt and [Anheuser-Busch] bore the burden of proof on distinct counts of their causes of action. The District Court understandably chose to allow the actual plaintiff, the party that filed the lawsuit, to proceed first.").

Rule 611 of the Federal Rules of Evidence and several cases that Unilin cites as support for realignment address only the **sequence** in which the parties present evidence at trial, not parties' designations as "plaintiff" or "defendant." Fed. R. Evid. 611; *Moylan v. Meadow*

-14-

*Club, Inc.*, 979 F.2d 1246, 1251 (7th Cir. 1992) (the court changed sequence of closing argument allowing defendant to argue first and last because the only remaining issue was defendant's affirmative defense); *Martin*, 614 F.2d at 501 (upholding the denial of defendant-counter-claimant's request for a rebuttal closing argument – parties were directed to present closing arguments in the same order they had presented evidence and a rebuttal argument was allowed to the plaintiff only); *Grayling Indus., Inc. v. GPAC Inc.*, 25 U.S.P.Q.2d 1239, 1240 (N.D. Ga. 1992) (Absent the plaintiff's claims which were to be resolved by the court, the action closely resembled a classic patent infringement action upon which the defendant had the burden of proof and that, therefore, the defendant was entitled to open and close the case to the jury and to present evidence first.). Therefore, such authorities provide little, if any, support for the party realignment sought by Unilin.

   *Starter Corporation v. Converse, Inc.*, 170 F.3d 286 (2d Cir. 1999), is also cited by Unilin. *Starter* was a declaratory judgment action brought by Starter Corporation ("Starter"), an athletic apparel manufacturer, to establish Starter's right to use certain trademarks on athletic footwear. Defendant Converse, Inc., ("Converse") brought counterclaims against Starter. In response to Converse's pretrial request that it be realigned as the plaintiff, the court held that it would do so only if Converse, the would-be plaintiff, would concede the second (and the only disputed) prong of the test for declaratory judgment jurisdiction in a trademark infringement action. *Id*. at 291. Converse conceded the issue and, then, the court granted the realignment "because Converse now had 'the burden of proof on the only remaining substantive issue,'

namely, whether use of the Starter marks on shoes would infringe upon the Converse mark." *Id.* (internal citation omitted).

In this action, there is no indication that Unilin would concede the invalidity of its patents or that Armstrong and the Berry Defendants would concede that their products infringe the patents. Absent such concession, neither Unilin nor Armstrong and the Berry Defendant bear the burden of proof on a sole disputed issue. *Starter* is, therefore, inapposite.

Unilin also cites *Datamize, Inc. v. Fidelity Brokerage Services, LLC*, No. 2:03-CV-31-DF, 2004 WL 1683171 (E.D. Tex. Apr. 22, 2004), a patent infringement action. In *Datamize*, realignment was granted due to a finding that the alleged infringer had engaged in forum shopping — not merely to obtain a more simplistic organization of the claims. The alleged infringer, Plumtree, filed its request for a declaratory judgment in the Northern District of California prior to the dismissal of the original infringement suit filed by the patentee, Datamize, in the District of Montana. *Datamize*, 2004 WL 1683171, at *1. Datamize then filed a motion for realignment in the Northern District of California. The motion was granted because the court "expressly found that Plumtree had engaged in a blatant form of forum shopping." *Id.* at *7. Here, no finding of forum shopping has been made — nor is there evidence of such conduct.

Unilin has not persuaded the Court that realignment of the parties is appropriate under the circumstances of this action. Therefore, its request is denied.

### *Consolidation of Claims*

Unilin requests leave to consolidated all its claims in a single amended complaint, rather than continuing with the three complaints. Such request is not specifically addressed by

-16-

Armstrong and the Berry Defendants. A party should be granted leave to amend its pleadings absent undue delay or prejudice, bad faith, or dilatory motive on the part of the movant. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The amendment of the complaint to included all the claims in the Case No. 02-C-1266, 03-C-342, and 04-C-121 actions will streamline this action and there is no indication that amendment should be denied based on undue delay or prejudice, bad faith, or dilatory motive. Therefore, to that extent, Unilin's motion is granted.

### Substitution of Flooring Industries

Unilin also seeks to substitute Flooring Industries as a party for Unilin Décor, in its capacity as exclusive licensee of the '836 patent. Apparently, Unilin's counsel was unaware that, for some time, Unilin Décor was no longer the exclusive licensee of the patents in suit and that Flooring Industries had assumed that status. (Unilin Mem. of P. & A. 12-13.)

Armstrong and the Berry Defendants first argue that Unilin is collaterally estopped from substituting Flooring Industries since Judge Clevert previously ruled on a motion by Unilin that included, among other things, a request to substitute Flooring Industries. (Berry Opp'n. Br. at 12.) In an order issued on August 11, 2003, in the 02-C-1266 action, Judge Clevert denied that motion to amend stating that: "Given the joint litigation history of these parties and the two pending suits involving the '486 patent, this court is concerned over perceived forum shopping, delay in moving forward with the prosecution of claims, and undue prejudice to the counterclaim defendants. The Unilin defendants' motion for leave to amend the counterclaim has the effect of further splintering this litigation among three district courts." *Alloc v. Unilin Decor, N.V.*, Case No. 02-C-1266, slip op. at 3 (E.D. Wis. Aug. 11, 2003.) The August 11, 2003, order indicated

that the parties agreed that the prudent course appeared to be a motion to consolidate filed in Case Nos. 00-C-1823 and 02-C-1266. *Id.* The substitution of Flooring Industries for Unilin Décor was not specifically addressed in the August 11, 2003, decision. Additionally, a subsequent order suggests that Judge Clevert contemplated that motion to amend might be renewed. (Berry Opp'n Br., Ex. D & E 1-2) ("the court's observation that the August 11 decision considered the possibility that the defendant may file a second motion following consideration [sic] of related cases.") Moreover, for a ruling to have preclusive effect under the doctrine of issue preclusion (also known as collateral estoppel), the issue decided must have been necessary to a final judgment. *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 496 (7th Cir. 2002). A ruling that does not specifically address the issue does not suffice. Also, there has been no final judgment in this action.

Armstrong and the Berry Defendants also argue that the exclusive licensees of the patents lack standing to be parties to infringement suits. (Berry Opp'n. Br. 13.) However, an exclusive licensee is a proper party to an infringement suit when the licensee has "received not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). Unilin has alleged that Flooring Industries is the sole licensee of the '836 patent and holds full rights to enforce it. (Unilin Mem. of P. & A. 13.) Therefore, at this juncture, Unilin's allegations indicate that Flooring Industries has standing to be a plaintiff in the present action. *See Rite-Hite*, 56 F.3d at 1552.

Armstrong and the Berry Defendants repeatedly note that Rule 15(a) of the Federal Rules of Civil Procedure requires that a party should be granted leave to amend its pleadings absent undue delay or prejudice, bad faith, or dilatory motive on the part of the movant. (Berry Opp'n. Br. at 5 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).)  In regard to the substitution of Flooring Industries, Armstrong and the Berry Defendants do not argue that such substitution would prejudice them, any delay would ensue, or that Unilin is acting in bad faith. Therefore, Unilin will be allowed to amend its complaint to substitute Flooring Industries for Unilin Décor.

### *Proposed '486 Patent Infringement Claims Against Armstrong*

Addressing whether Unilin should be allowed to add proposed infringement claims against Armstrong based on the '489 patent, requires consideration of the impact of the automatic bankruptcy stay of § 362.  "The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, . . . thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in (1978) U.S. Code Cong. & Ad. News 6296-97 and quoting *In re Frigitemp Corp.*, 8 B.R. 284, 289 (D.C.S.D.N.Y. 1981)).  Thus, unless otherwise ordered by the bankruptcy court, "the automatic stay continues until the property in question is no longer property of the estate, the case is closed or dismissed, or (for a Chapter 13 proceeding) a discharge is granted or denied." *In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998) (citing 11 U.S.C. § 362(c)).  Subsection (b)

enumerates over twenty specific instances in which the automatic stay under subsection (a) does not apply. 11 U.S.C. § 362. Parties whose claims do not fall within any of the enumerations of subsection (b) may still request, under subsection (d), that the *presiding bankruptcy court* grant relief from the stay of subsection (a) for good cause. *In re Williams*, 144 F.3d at 546; 11 U.S.C. § 362(d).

Since the statute stays the "commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title," 11 U.S.C. § 362(a), the critical question becomes when the claim arose. *In re Mahurkar*, cited previously in this decision, involved infringement claims brought by the patentee which predated the alleged infringer's filing of a bankruptcy petition. 140 B.R. at 970. *In re Mahurkar* holds that "the continuation during bankruptcy of conduct (such as the sale of [allegedly infringing products]) begun beforehand is most certainly one in which an action 'was or could have been commenced before'" the bankruptcy petition was filed. *Id*. at 976. The court stayed both the patentee's infringement claims[8] and the alleged infringer's request for declaratory judgement, stating that "the bankruptcy court is the clearing house for private actions, and it has yet to approve [the patentee's] request to pursue his demand for an injunction." *Id*. at 977. Thus, when allegedly infringing conduct began pre-petition, the fact that a plaintiff does not include otherwise actionable conduct in its complaint and alleges only post-petition claims, does not, alone, save the claims from the automatic stay of Section 362(a).

---

[8]Although the patentee had previously conceded that claims for damages spanning pre- and post-petition conduct were stayed, there is nothing to suggest that *In re Mahurkar* should be limited to injunctive relief claims.

Unilin contends that 28 U.S.C. § 959(a) is an exception to Section 362(a). Section 959 states that:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, *with respect to any of their acts or transactions in carrying on business connected with such property.* Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a) (emphasis added).[9] Section 959(a) is typically applied to allow suits against trustees, receivers, managers of property, or debtors in possession for actions taken after they have been appointed as such; i.e., to entirely post-petition conduct. *See, e.g.*, *In re Newman Cos. of Wis., Inc.*, 45 B.R. 308, 309 (Bankr. E.D. Wis. 1985); *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000); *Haberern v. Lehigh and New England Ry. Co.*, 554 F.2d 581, 587 (3d Cir. 1977).

Section 959(a) applies only to suits brought against a party in its capacity as trustee, receiver, manager, or debtor in possession with respect to any of their acts or transactions in carrying on the business connected with such property. *Carter*, 220 F.3d at 1254 (comparing action against trustee for acts in carrying on business of debtor with action against trustee in personal capacity for breach of fiduciary duty). For one to have become a trustee, receiver or debtor in possession, logically the debtor must have previously filed a bankruptcy petition. Therefore, when suing a trustee, receiver, manager, or debtor in possession for "acts or transactions in carrying on business connected with" the managed bankruptcy estate property, the

---

[9]*In re Mahurkar* did not address 28 U.S.C. § 959.

Case 2:02-cv-01266-RTR   Filed 12/15/05   Page 21 of 23   Document 218

"acts or transactions" must necessarily have taken place post-petition, or they would not have been performed by the trustee, receiver, manager, or debtor in possession in that capacity. In other words, § 959(a) applies to suits for post-petition conduct.

The '486 patent issued approximately one year before the date Armstrong filed its bankruptcy petition. Therefore, Unilin could have brought its infringement claims under the '486 patent *before* Armstrong filed for bankruptcy. Under *In re Mahurkar*, the fact that Unilin would limit its claims to seek only post-petition damages would not save Unilin's claims with respect to the '486 patent from the automatic stay provision. As such, Unilin's proposed claims against Armstrong would be futile since they would not withstand a subsequent motion by Armstrong to dismiss or stay under § 362(a). *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). Accordingly, the Court will not permit Unilin to assert claims of infringement of the '486 patent against Armstrong at this time.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Armstrong's motion to dismiss under the customer suit exception (Docket No. 55) is **DENIED**.

Unilin's Motion to Realign the Parties and for Leave to File an Amended Consolidated Complaint (Docket No. 58) is **GRANTED** only to the extent that Unilin may amend its pleadings to substitute Flooring Industries for Unilin Décor as exclusive licensee of the patents in suit and to include all the claims in the Case No. 02-C-1266, 03-C-342, and 04-C-121 actions; the motion is **DENIED** in all other respects.

-22-

Unilin's amended complaint as described above **SHALL** be filed no later than

**January 15, 2006**.

Dated at Milwaukee, Wisconsin this 15th day of December, 2005.

**BY THE COURT**


**s/ Rudolph T. Randa**
**Hon. Rudolph T. Randa**
**Chief Judge**